*271 OPINION.
Lansdon:
The first question involved in this appeal is whether the taxpayer was entitled to deduct the amount of $37,926.75 from its income for the year ended June 30, 1919, as a bad debt ascertained to be worthless and written off its books in the year in question. It is the opinion of the Board that the taxpayer has failed to show that any serious effort was ever made to collect the amount in controversy. On the contrary, it is admitted that C. S. Webb, Inc., decided, for business reasons that seemed good to its stockholders, that it would not attempt to secure collection from C. S. Webb and his two associates and that it would absorb the entire loss.
The Board is of the opinion that the loss claimed by the taxpayer as a deduction from its income for the year ended June 30, 1919, could have been collected. C. S. Webb owned 50 per centum of the capital stock of the taxpayer, which was so prosperous during the year in question that it earned a net income of $102,907.75 on a capital investment of $200,331.04. It is reasonably certain that the whole debt could have been collected from C. S. Webb. The other two parties to the Hartzog transaction were business men of South Carolina, and each of them was an officer of a cotton mill. It may be that neither C. S. Webb nor either of his partners in the Hartzog transaction was able to pay all or even his proper share of the loss that is claimed by the taxpayer as a bad debt, but no evidence to that effect was adduced at the hearing before the Board.
Counsel for the taxpayer appeared to attach some importance to an allegation, supported by the opinion of an attorney, that the loss in question was uncollectible because it resulted from a transaction *272 alleged to be illegal under the laws of South Carolina. The Board declines to give any consideration to this contention in the absence of any evidence of illegality and since the matter was not determined by any court clothed with jurisdiction to construe the laws of South Carolina.
The second point to be determined is whether the Commissioner erred in his computation and adjustment of the taxpayer’s invested capital for the year ended June 30, 1919. The payment of alleged excessive dividends was not disclosed until some time subsequent to the close of the fiscal year ended June 30, 1919. The repayments and adjusting entries were not made until after the close of that year. The stockholders had the use of the $6,688.25 which the taxpayer’s auditors assert was paid to them in error on August 28,1918, from that date until after the close of the fiscal year in question, and the taxpayer was deprived of the use of that amount of money for the same time. These are facts that it is impossible for any bookkeeping entries subsequently made to affect in any way.